523 A.2d 374

Anastos MAKRIPODIS, a minor, by His Guardian, Mike
MAKRIPODIS and Mike Makripodis and Dolly
Makripodis, Appellants,

v.

MERRELL–DOW PHARMACEUTICALS, INC. and Rite Aid
Corporation, Appellees.

Superior Court of Pennsylvania.

Argued June 26, 1986.

Filed March 16, 1987.

590

Paul Hilko, Pittsburgh, for appellants.

Raymond G. Hasley, Pittsburgh, for appellees.

Before ROWLEY, McEWEN and TAMILIA, JJ.

McEWEN, Judge:

Appellants undertook this products liability action alleging that their child, Anastos Makripodis, was born with certain congenital abnormalities as a result of the ingestion of the drug Bendectin by his mother, appellant Dolly Makripodis, during her pregnancy. The drug Bendectin was manufactured by Merrell-Dow Pharmaceuticals, Inc. and purchased by the appellants at a pharmacy owned by Rite Aid Corporation, upon presentation of a physician's prescription for the drug. Appellants filed suit against Merrell-Dow Pharmaceuticals, Inc. and Rite Aid Corporation, and alleged, *inter alia,* that appellee Rite Aid Corporation (1) had breached the implied warranty of merchantibility because Bendectin was unfit and unsafe for its ordinary use, the treatment of nausea in pregnant women, and (2) that Rite Aid was strictly liable in tort as Bendectin was a defective product, unreasonably dangerous due to the absence of proper warnings concerning its teratogenic potential. The distinguished Judge Emil E. Narick granted the preliminary objections filed by Rite Aid Corporation, and dismissed the complaint as to Rite Aid, after concluding that the complaint failed to state a cause of action against Rite Aid. The trial court so concluded by reason of its holdings (1) that a pharmacist cannot be held liable for breach of an implied warranty of merchantibility where a prescription drug is properly filled with an unadulterated drug, and (2) that a pharmacist cannot be held strictly liable on the basis of inadequacies in the warnings provided by the manufacturer since the warnings required to be provided by the manufacturer concerning any risks or dangers attendant to the use of the drug need be supplied only to physicians and thus do not impact upon the safe use of the drug as sold by the pharmacy. We affirm.

The standard of review which we must apply when examining a challenge to the sustaining of preliminary objections in the nature of a demurrer is well-settled:

All material facts set forth in the complaint as well as all inferences reasonably deducible therefrom are admitted as true for [the purposes of this review.] *Clevenstein v. Rizzuto*, 439 Pa. 397, 266 A.2d 623 (1970). The question presented by the demurrer is whether on the facts averred the law says with certainty that no recovery is possible. *Hoffman v. Misericordia Hospital of Philadelphia*, 439 Pa. 501, 267 A.2d 867 (1970). Where doubt exists as to whether a demurrer should be sustained this doubt should be resolved in favor of overruling it. *Birl v. Philadelphia Electric Co.*, 402 Pa. 297, 167 A.2d 472 (1960).

*Mahoney v. Furches*, 503 Pa. 60, 66, 468 A.2d 458, 461–462 (1983), *quoting Vattimo v. Lower Bucks Hospital, Inc.*, 502 Pa. 241, 244, 465 A.2d 1231, 1232–1233 (1983). *Accord: Kyle v. McNamara & Criste*, 506 Pa. 631, 633–34, 487 A.2d 814, 815 (1985); *Judge v. Allentown and Sacred Heart Hospital Center*, 506 Pa. 636, 638–39, 487 A.2d 817, 818 (1985). *See also: Baker v. Magnetic Analysis Corp.*, 347 Pa.Super. 188, 191–93, 500 A.2d 470, 472 (1985).

The issues posed are not novel, but the Pennsylvania appellate courts have not, until now, addressed the question of (1) whether a retail druggist, who properly fills a prescription of a medical doctor with the proper and unadulterated drug prescribed, is liable to the patient-purchaser for breach of an implied warranty of merchantibility if the drug produces harmful effects upon the purchaser, or (2) whether a retail druggist is strictly liable as the retailer of a defective product where the warnings provided by the drug manufacturer are inadequate.

Appellants first argue that the court erred in concluding that they had not stated a cause of action against Rite Aid for breach of the implied warranty of merchantibility since, they assert, such a warranty arises whenever goods are sold by a person who is a merchant [1] with respect to goods of that kind. *See:* 13 Pa.C.S. § 2314.

1. The term "merchant" is defined as "a person who deals in goods of the kind; or otherwise by his occupation holds himself out as having

■ The essence of the warranty of merchantibility is that the item sold is fit for the ordinary purposes for which such goods are used. *See: Wisniewski v. Great Atlantic and Pacific Tea Company*, 226 Pa.Super. 574, 577–81, 323 A.2d 744, 746–747 (1974); 13 Pa.C.S. § 2314(b)(3). The Florida Supreme Court in addressing this issue in *McLeod v. W.S. Merrell Company*, 174 So.2d 736 (Fla.1965), noted that prescription drugs are not available to the general public but rather "only to a very limited segment of the public who had been seen by their physician and who had presented their doctor's prescription directing that the drug be supplied." *Id.* at 738. The *McLeod* court declined to find that a druggist warrants that any prescription drug, sold upon a doctor's prescription, will be fit for its "ordinary uses". Rather, the court held that "the rights of the consumer can be preserved, and the responsibility of the retail prescription druggist can be imposed, under the concept that a druggist who sells a prescription warrants that:

(1) he will compound the drug prescribed;

(2) he has used due and proper care in filling the prescription;

(3) the proper methods were used in the compounding process; and

(4) the drug has not been infected with some adulterating foreign substance."

*Id.* at 739. *See also: Bichler v. Willing*, 58 A.D.2d 331, 332–35, 397 N.Y.S.2d 57, 58–59 (1977); *Fellows v. USV Pharmaceutical Corp.*, 502 F.Supp. 297 (D.C.Md.1980); *Ullman v. Grant*, 114 Misc.2d 220, 450 N.Y.S.2d 955 (1982); *LeMire v. Garrard Drugs*, 95 Mich.App. 520, 524–26, 291 N.W.2d 103, 105 (1980).

■ Appellee invites this Court to adopt the reasoning of the California Supreme Court in *Murphy v. E.R. Squibb & Sons, Inc.*, 221 Cal.Rptr. 447, 40 Cal.3d 672, 710 P.2d 247 (1985), and hold that the dominant role of the pharmacist in filling a prescription is the performance of a service rather

knowledge or skill peculiar to the practices or goods involved in the transaction...." 13 Pa.C.S. § 2104.

than the sale of a product and thus conclude that no warranties arise as an incident of the sale of a prescription drug. *See: Jones v. Irvin*, 602 F.Supp. 399, 400 (S.D.Ill. 1985). However, we find it unnecessary, for resolution of this appeal, to determine whether a retail prescription druggist is the provider of a professional service or a retail merchant, as that term is used in 13 Pa.C.S. § 2314, when dispensing a drug upon a physician's prescription since there are other, more compelling reasons to refuse to impose an implied warranty of merchantibility upon the sale of a prescription drug.

■ As heretofore observed, such drugs are not available to the general public but may be obtained only upon the prescription of a licensed physician. This restriction upon the availability of such drugs has been imposed because of the inherently dangerous properties of such drugs. Prescription drugs may pose a threat to the safety of certain identifiable segments of the public, or may be dangerous when used in conjunction with other drugs or substances, or may be harmful if taken by persons suffering from certain diseases or conditions. "There are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs .... many of which for this very reason cannot legally be sold except to physicians, or under the prescription of a physician." Restatement (Second) of Torts § 402A, Comment (K). The ordinary and intended use of penicillin is to combat infections. Penicillin, however, has the ability to cause death when ingested by individuals who are allergic to it, or, when taken with certain other drugs or substances, may cause harm to the patient-consumer. Thus, we find that the very nature of prescription drugs themselves precludes the imposition of a warranty of fitness for "ordinary purposes", as each individual for whom they are prescribed is a unique organism who must be examined by a physician who is aware of the nature of the patient's condition as well as the medical history of the patient. Thus, we hold that a

druggist who dispenses a prescription drug pursuant to the prescription of a licensed physician only warrants:

(1) that he has compounded the drug prescribed with due care,

(2) in the strength and quantity prescribed,

(3) that he has used the proper methods in the compounding process,

(4) that the drug is pure and unadulterated,[2] and

(5) that he has labeled the drug in accordance with the directives of the physician's prescription.

The trial court thus properly dismissed that portion of appellant's complaint which alleged a cause of action against Rite Aid for breach of a warranty of merchantibility.

Appellants also argue that the trial court erred in dismissing that portion of their complaint which alleged that appellee, Rite Aid Corporation, was strictly liable in tort as the retailer of a product which was unreasonably dangerous due to the absence of any warnings as to the teratogenic properties of the drug.

■ "Section 402A of the Restatement (Second) of Torts imposes strict liability on the seller of any product 'in a defective condition unreasonably dangerous to the user or consumer'.... Comment (h) to the section makes clear that a product, as to which adequate warning of danger involved in its use is required, sold without such warning is in a 'defective condition'." *Incollingo v. Ewing*, 444 Pa. 263, 287, 282 A.2d 206, 219 (1971). *Accord: Fravel v. Suzuki Motor Company, Ltd.*, 337 Pa.Super. 97, 102–03, 486 A.2d 498, 501 (1984). Where a prescription drug is accompanied by proper warnings, the manufacturer "is not strictly liable for unfortunate consequences attending the use of otherwise useful and desirable products which are attended with a known but apparently reasonable risk.

**2.** Such a warranty is, of course, not applicable to the situation where the prescription drug has been adulterated as a result of the secret and undiscovered, deliberate criminal act of a third person.

Rather, such a manufacturer is liable only if he fails to exercise reasonable care to inform those for whose use the article is supplied of the facts which make it likely to be dangerous." *Baldino v. Castagna,* 505 Pa. 239, 244, 478 A.2d 807, 810 (1984). In the case of prescription drugs, the warning required is not to the general public or to the consumer but rather to the prescribing doctor. *Baldino v. Castagna, supra* 505 Pa. at 244–45, 478 A.2d at 810; *Incollingo v. Ewing, supra,* 444 Pa. at 286–87, 282 A.2d at 220; *Leibowitz v. Ortho Pharmaceutical Corporation,* 224 Pa.Super. 418, 430–32, 307 A.2d 449, 457 (1973).

■ Appellants contend that the failure of appellee Rite Aid to warn Mrs. Makripodis of the teratogenic potential of the drug Bendectin caused the drug to be unreasonably dangerous and as the retailer of an unreasonably dangerous product, Rite Aid is strictly liable for the resultant harm.

■ It is clear that the manufacturer of a prescription drug known to be dangerous for its intended use, has "a duty to exercise reasonable care to inform those for whose use the article [was] supplied of the facts which make [the product] likely to be dangerous." *Incollingo v. Ewing, supra,* 444 Pa. at 285 n. 8, 282 A.2d at 220 n. 8. However, the warnings which are required to be given by the manufacturer must be directed to the physician, not the patient-consumer. This is so because it is the duty of the prescribing physician to be fully aware of (1) the characteristics of the drug he is prescribing, (2) the amount of the drug which can be safely administered, and (3) the different medications the patient is taking. It is also the duty of the prescribing physician to advise the patient of any dangers or side effects associated with the use of the drug as well as how and when to take the drug. The warnings which must accompany such drugs are directed to the physician rather than to the patient-consumer as "[i]t is for the prescribing physician to use his independent medical judgment, taking into account the data supplied to him from the manufacturer, other medical literature, and any other source available to him, and weighing that knowledge against the personal

medical history of his patient, whether to prescribe a given drug." *Leibowitz v. Ortho Pharmaceutical Corporation, supra,* 224 Pa.Super. at 431, 307 A.2d at 457. Thus, in an action against a drug manufacturer based upon inadequate warnings, the issue to be determined is whether the warning, if any, that was given to the prescribing physicians was proper and adequate. *See: Baldino v. Castagna, supra,* 505 Pa. at 244–45, 478 A.2d at 810.

Appellants, however, argue that a retail pharmacist should be held strictly liable where no warnings or inadequate warnings are provided by the pharmacist to the patient-consumer. Appellants thus seek to impose upon the retail pharmacist an independent duty to warn the patient-consumer of all possible adverse consequences associated with a drug. Such a duty would be greater than that imposed upon the drug manufacturer, who is required to provide such warnings only to prescribing physicians. We believe that to impose such a duty upon retail pharmacists would be unwise and would ill serve the interests of the consuming public.

The purpose of the requirement that all warnings as to potential dangers associated with prescription drugs be provided to prescribing physicians is that the prescribing physicians are, in the case of prescription drugs, the actual consumers. In most instances, the patient-consumer would be unable to properly assess and weigh the benefits and risks attendant to the use of such drugs. Moreover, the retail pharmacist is in most instances unfamiliar with the medical history and condition of the patient-consumer and, in any event, is not a physician, trained in the diagnosis and treatment of diseases. A requirement that a pharmacist provide to the consumer the same warnings that the drug manufacturer must supply to prescribing physicians would intrude upon the doctor-patient relationship. Such warnings, moreover, would be inadequate to enable the average consumer to evaluate the benefits and risks attendant to the use of such drugs. We, therefore, hold that a retail pharmacist is not required to provide to the patient-consumer

such warnings as are required to be provided to physicians by the manufacturers of prescription drugs.

██ Appellants argue in the alternative that even if Rite Aid had no independent duty to warn them of the risks associated with the use of the drug Bendectin, appellee Rite Aid is nevertheless strictly liable as a retailer of a defective product. We disagree.[3]

It is well settled that a manufacturer of a prescription drug is liable "if he fails to exercise reasonable care to inform [prescribing physicians] of the facts which make it likely to be dangerous." *Baldino v. Castagna, supra* 505 Pa. at 244, 478 A.2d at 810. *Accord: Incollingo v. Ewing, supra,* 444 Pa. at 285 n. 8, 282 A.2d at 220 n. 8. Such information must be directed to physicians because of their unique role in the distribution of prescription drugs. A pharmacist cannot dispense such drugs himself but can do so only upon the direction of a physician. The benefits and risks have been weighed and the selection of the drug has been accomplished by the time that the patient-consumer presents the pharmacist with a prescription for a certain drug. Thus, as the trial court concluded, the absence of adequate warnings from the manufacturer *at the time the drug is dispensed* by the pharmacist does not impact upon the safe use of the drug as sold by the pharmacy. It is the physician, rather than the consumer, who must be made aware of the risks associated with the use of the drug and we can perceive no benefit to be derived from the imposition of strict liability upon the pharmacist who properly dispenses a prescription drug upon the prescription of a duly licensed physician.

**3.** Other courts which have addressed this issue have similarly declined to hold a retail pharmacist strictly liable as the retailer of a defective product, unreasonably dangerous to the consumer due to the absence of adequate warnings. *See: Ramirez v. Richardson-Merrell, Inc.* 628 F.Supp. 85 (E.D.Pa.1986); *Jones v. Irvin, supra; Murphy v. E.R. Squibb & Sons, Inc., supra; Kinney v. Hutchinson,* 449 So.2d 696 (La.Ct.App. 1984); *Ullman v. Grant, supra; LeMire v. Garrard Drugs, supra; Batiste v. American Home Products Corp.,* 32 N.C.App. 1, 231 S.E.2d 269 (1977); *Bichler v. Willing, supra.*

We, therefore, affirm the entry of summary judgment in favor of appellee Rite Aid Corporation.