562 A.2d 378

**Dorothy M. WHITE, Executrix of the Estate of Alfred S. White, Deceased, Appellant,**

v.

**Roger D. WEINER, M.D., Robb S. Seto, M.D., Gerard Voci, M.D., Episcopal Hospital, Eli Lilly and Company, Walter H. Beadling, Jr. and Dr. Baruch.**

Superior Court of Pennsylvania.

Argued April 4, 1989.

Decided July 10, 1989.

---

John M. Sheridan, Media, for appellant.

James M. Beck, Philadelphia, for Eli Lilly, appellees.

Before BROSKY, McEWEN and HOFFMAN, JJ.

HOFFMAN, Judge:

This appeal is from an order granting appellee's renewed motion for summary judgment. Appellant contends that the lower court erred in entering its order. For the reasons that follow, we affirm the order below.

Appellant's husband died on August 14, 1982, allegedly from complications resulting from triple bypass surgery. On August 2, 1984, appellant instituted this action by writ of summons. Thereafter, on October 31, 1984, appellant filed a complaint alleging negligence on the part of several health care providers and negligence and strict liability of appellee, Eli Lilly and Company. This appeal concerns only the claims that appellant is pursuing against Eli Lilly.

According to appellant, appellee, a bulk supplier of pharmaceutical chemicals, had failed to provide an adequate warning on the packaging of the component chemical, bulk protamine sulfate, that it supplied to The Upjohn Company.[1] Upjohn had manufactured the prescription drug protamine sulfate that was administered to appellant's decedent and to which he allegedly had an adverse reaction.[2] Appellee filed its answer and new matter on March 6, 1985. On July 28, 1987, appellee filed a motion for summary judgment, and on September 9, the court below denied the motion without prejudice.

1. The Upjohn Company is not a party in this case. Appellant, however, did file suit in federal court against Upjohn; the district court granted Upjohn's motion for summary judgment on the basis that the Pennsylvania two-year statute of limitations barred appellant's claims. *See* Renewed Motion of Defendant Eli Lilly and Company for Summary Judgment, May 25, 1988, at Exhibit C (*White v. Upjohn Co.*, No. 86-2600, 1987 WL 6696 (E.D.Pa. Feb. 12, 1987) (memorandum and order by O'NEILL, J.)).

2. More specifically, appellant states that her husband "died from complications caused by an anaphylactoid reaction to protamine sulfate." Brief for Appellant at 3. The decedent had been vasectomized approximately ten years prior to his bypass operation. Because protamine sulfate is derived from the reproductive fluids of the male salmon, appellant contends that it carries a risk of allergic reaction in vasectomized men who, following the vasectomy, may develop antibodies to sperm.

After engaging in discovery, appellee renewed its motion for summary judgment, raising the following issues:

A. Lilly Is Entitled To Summary Judgment Because Plaintiff's Warning Claim Is Contrary To The Governing Federal Regulations.

. . . . .

B. Lilly Is Entitled To Summary Judgment Because Pennsylvania Law Does Not Impose A Duty To Warn End Users On A Supplier Of Bulk Component Chemicals.

. . . . .

C. Lilly Is Entitled To Summary Judgment Because Upjohn Would Not Have Changed Its Warnings In Response To Information From Lilly.

. . . . .

D. Lilly Is Entitled To Summary Judgment Because Dr. Seto Would Not Have Changed The Decedent's Treatment In Response To A Warning From Upjohn.

Memorandum of Law of Defendant Eli Lilly and Company in Support of Its Renewed Motion for Summary Judgment, May 25, 1988 at 8, 13, 18, 21. Appellant responded to appellee's motion, and on July 20, 1988, the court below entered an order granting the motion and dismissing appellant's complaint with prejudice. In the opinion accompanying its order, the lower court stated as follows:

As a matter of law Eli Lilly and Company as a bulk supplier of chemicals used in the making of prescription drugs had no duty to warn Plaintiff, Plaintiff's doctors or the manufacturer of the administered prescription drug of the allergic reaction that post vasectomized patients may have to Protamine Sulfate.

According to federal law all prescription drugs must be labeled according to Food, Drug and Cosmetic Act requirements, 21 U.S.C.S. § 825.

Suppliers of bulk drugs are specifically exempted from these labeling requirements of the Food, Drug and Cosmetic Act, 21 U.S.C. 353(a) (1982) provides in pertinent part.

The secretary is directed to promulgate regulations exempting from any labeling or packaging requirements of this chapter drugs ... which are, in accordance with the practice of the trade, to be processed, labeled or repacked in substantial quantities at establishments other than those where originally processed or packed.

As directed 21 C.F.R. § 201.122 (1982) specifically exempts from labeling requirements.

A drug in a bulk package, except tablets, capsules, or other dosage unit forms, intended for processing repacking, or use in the manufacture of another drug shall be exempt from Section 502(f)(1) of the act [if its label (sic)] bears the statement "caution: (sic) For manufacturing, processing or repacking."

Lilly sold Protamine Sulfate to Upjohn in bulk packages not in tablet, capsule or dosage form. The packaging of the bulk Protamine Sulfate contained the warning required. Therefore, the Protamine Sulfate when supplied to the Upjohn [Company] by Lilly fell squarely in the exemption of 21 C.F.R. § 201.122 (1982). The duty of care owed by Lilly is to comply with the congressional statute and the Regulations of Food and Drug Administration. Eli Lilly and Company met this duty, and their renewed Motion for Summary Judgment must be granted.

Lower Court Opinion at 4–5. This timely appeal followed.

### A.

Appellant contends that in granting appellee's renewed motion for summary judgment, the lower court erred

in holding that the Defendant's compliance with the bulk product labeling requirements of the Food, Drug and Cosmetic Act, 21 U.S.C. § 301 et seq. and the regulations promulgated thereunder at 21 C.F.R. § 201.122 is conclusive as a matter of law on the issue of whether its pharmaceutical product is unreasonably dangerous and therefore defective under the restatement (2d) of Tortes [sic] § 402A.

Plaintiff's Statement of Matters Complained of on Appeal.[3] Appellant seemingly argues that satisfaction of federal labeling requirements does not insulate a bulk supplier from complying with the common law duty to warn, even though the manufacturer of the finished prescription drug has a federally-imposed duty to warn of the dangers of its product. Expanding on this theme, appellant claims that "at no time whatsoever did Eli Lilly and Company warn any party whatsoever of the known dangerous propensities of its drug. It did not warn the medical community; it did not warn the Food and Drug Administration and it did not warn the Upjohn Company." Brief for Appellant at 14.

■ As we interpret appellant's argument, she would have this Court impose a rather expansive duty on appellee. Appellant, however, stops short of seeking a separate warning from the bulk manufacturer to the ultimate consumer.[4] As a preliminary matter, we observe that it is not within the province of this Court to impose additional requirements on appellee vis à vis the FDA. Our task, therefore, is to determine whether, as a matter of Pennsylvania law, appellee had a duty to warn Upjohn and the medical community of the risks associated with bulk protamine sulfate.

At the outset, we note that an order granting a motion for summary judgment will not be reversed unless the court below has committed an error of law or clearly abused its discretion. See *Ackler v. Raymark Indus., Inc.,* 380 Pa.Super. 183, 185–86, 551 A.2d 291, 292 (1988); *Jones v. Keystone Ins. Co.,* 364 Pa.Super. 318, 323, 528 A.2d 177, 179 (1987), *allocatur denied,* 518 Pa. 613, 540 A.2d 535 (1988); *Miller v. Federal Kemper Ins. Co.,* 352 Pa.Super. 581,

**3.** This appeal concerns a bulk supplier's duty to warn only within the context of strict liability, as appellant did not raise in her statement of matters complained of on appeal or argue in her brief other theories of liability. *See* Pa.R.A.P. 1925(b).

**4.** It is settled law that the duty to warn the general public of the dangerous propensities of a prescription drug is one that is imposed on the prescribing physician. *See Baldino v. Castagna,* 505 Pa. 239, 244–45, 478 A.2d 807, 810 (1984); *Incollingo v. Ewing,* 444 Pa. 263, 286–88, 282 A.2d 206, 220 (1971); *Makripodis v. Merrell–Dow Pharmaceuticals, Inc.,* 361 Pa.Super. 589, 596, 523 A.2d 374, 378 (1987).

585–86, 508 A.2d 1222, 1225 (1986). Further, the law on summary judgment is well-established. *See Bowman v. Sears, Roebuck & Co.*, 245 Pa.Super. 530, 535, 369 A.2d 754, 756 (1976).

'Summary judgment is made available by Pa.R.Civ.P. 1035, 12 P.S. Appendix, when the pleadings, depositions, answers to interrogatories, admissions on file and supporting affidavits considered together reveal no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. This severe disposition should only be granted in cases where the right is clear and free from doubt. To determine the absence of a genuine issue of fact, the court must take the view of the evidence most favorable to the non-moving party, and any doubts must be resolved against the entry of the judgment.' *Husak v. Berkel, Inc.*, 234 Pa.Super. 452, 458, 341 A.2d 174, 177 (1975). Thus, we need only determine whether there is a genuine issue of triable fact.

*Id.; see also Bobb v. Kraybill*, 354 Pa.Super. 361, 364, 511 A.2d 1379, 1380 (1986), *allocatur denied*, 513 Pa. 633, 520 A.2d 1384 (1987); *Curry v. Thompson*, 332 Pa.Super. 364, 368, 481 A.2d 658, 659 (1984).

## B.

It is axiomatic that the existence of a federal statute, such as that governing the manufacture, distribution, and sale of prescription drugs, *see* Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301–392 (1982) (hereinafter "the Federal Act"),[5] does not necessarily preempt state action in that field, *see* Controlled Substance, Drug, Device and Cosmetic Act, 35 Pa.S. § 780–101 to 780–144 (hereinafter "the Commonwealth Act"). In *Whitehall Laboratories Division of American Home Products Corp. v. Wilbar*, 397 Pa. 223, 154 A.2d 596 (1959), our Supreme Court specifically conclud-

---

5. All references hereinafter to the United States Code and to the Code of Federal Regulations are to the 1982 versions.

ed that the Federal Act did not preempt this Commonwealth's Dangerous Drug Act of 1955,[6] a predecessor statute to the current Commonwealth Act:

> In determining whether the 'Dangerous Drug Act of 1955' and the regulations promulgated thereunder have been suspended by the 'Federal Food, Drug and Cosmetic Act' resort must be had to the language of the federal legislation for the purpose of ascertaining, if possible, the intent of Congress. An examination of the federal statute reveals neither an express or implicit exposition of any Congressional intent to preclude state action in the field of regulation of the sale and dispensing of drugs; there is, within the statute, 'no scheme of regulation' so 'pervasive' as to lead to the inference that the federal government by the passage of this legislation intended to pre-empt the field. The mere fact that Congress has taken action in this field does not justify the assumption that the federal system was thus intended to dominate that field.

*Id.,* 397 Pa. at 231, 154 A.2d at 601. Hence, because the field of drug regulation is not exclusively within the federal domain, this Commonwealth may enter that field so long as its laws and regulations do not conflict with the federal provisions. *Id.,* 397 Pa. at 234, 154 A.2d at 602.

The Commonwealth Act is a criminal statute, *see* 35 Pa.S. § 780–113 to 780–120 (prohibited acts, penalties), and does not establish a private right of action. *Compare* 21 U.S.C. §§ 331–337 (establishing penalties, providing that all actions shall be made in the name of the United States). The act, nevertheless, is instructive insofar as it is an expression of the legislature's policy on drug regulation, and it provides in pertinent part:

§ 780–108.  Misbranding

6. 35 Pa.S. §§ 935.1 to 935.10, *repealed by* Drug, Device and Cosmetic Act, Pub.L. 1664, § 31 (1961) (codified at 35 Pa.S. § 780–1 to 780–31). The Drug, Device and Cosmetic Act was repealed by the Controlled Substance, Drug, Device, and Cosmetic Act, Pub.L. 233, No. 64, § 43 (1972) (codified at 35 Pa.S. § 780–101 to 780.144).

A controlled substance, other drug or device or cosmetic shall be deemed to be misbranded:

. . . . .

(6) *Unless its labeling bears (i) adequate directions for use, and (ii) such adequate warnings against use in those pathological conditions or by children where its use may be dangerous to health or against unsafe dosage or methods or duration of administration or application in such manner and form as are necessary for the protection of users:* Provided, That where any requirement of subclause (i) of this clause as applied to any drug, device or cosmetic is not necessary for the protection of the public health, regulations shall be promulgated exempting such drug, device or cosmetic from such requirements.

35 Pa.S. § 780–108(6) (emphasis added).[7]

With respect to the adequacy of the warning included on a label, the misbranding provision must be read in conjunction with the following section of the act:

§ 780–133.   Conformity with federal law

*No controlled substance, other drug, device or cosmetic shall be deemed to be adultered or misbranded under this act if it complies with the applicable Federal act and/or regulations and interpretations issued pursuant thereto,* unless the secretary, after consultation with and upon the recommendation of the board, shall have previously promulgated a regulation stating that the applicable provision of the Federal act and/or regulations and interpretations thereof would not be followed.

35 Pa.S. § 780–133 (emphasis added).

■ As we read these sections, compliance with federal labeling requirements normally is sufficient to preclude criminal prosecution by the Commonwealth for misbranding. *Id.* Certainly the foregoing provisions do not control our disposition of appellant's claim in this civil action; they, nevertheless, do embody a legislative intent

7. A violation of the foregoing provision constitutes a misdemeanor. *See id.* § 780–113(b).

that we cannot ignore. Our legislature unequivocally has expressed a policy of deference to the federal scheme in the area of drug labeling, *id.*, and we can ascertain no reason not to extend that policy to civil cases raising misbranding claims.[8]

8. The adoption of a criminal standard to define a civil duty is not unprecedented in this Commonwealth. In *Congini ex rel. Congini v. Portersville Valve Co.*, 504 Pa. 157, 470 A.2d 515 (1983), our Supreme Court concluded that a social host was negligent per se for serving alcohol to a minor. The Court premised its conclusion on the "legislative judgment" that minors are "incompetent to handle the effects of alcohol," as embodied in section 6308 of the crimes code. *Id.*, 504 Pa. at 163, 470 A.2d at 517. Section 6308 establishes that

a person 'less than 21 years of age' commits a summary offense if he 'attempts to purchase, purchases, consumes, possesses or transports any alcohol, liquor or malt or brewed beverages.' Furthermore, under Section 306 of the Crimes Code, 18 Pa.C.S.A. § 306, an adult who furnishes liquor to a minor would be liable as an accomplice to the same extent as the offending minor.

*Id.*, 504 Pa. at 161, 470 A.2d at 517 (quoting 18 Pa.C.S.A. § 6308). Moreover, in reaching its conclusion, our Supreme Court relied on Section 286 of the Restatement of Torts Second, which provides that a court may adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment or an administrative regulation whose purpose is found to be exclusively or in part

(a) to protect a class of persons which includes the one whose interest is invaded, and

(b) to protect the particular interest which is invaded, and

(c) to protect that interest against the kind of harm that has resulted, and

(d) to protect that interest against the particular hazard from which the harm results.

*Congini,* 504 Pa. at 162, 470 A.2d at 517–18 (quoting Restatement (Second) of Torts § 286). The comments to section 286 include a specific discussion of the effect of a criminal statute on a civil negligence case:

*d. Where no provision for civil liability.* The enactment or regulation may, however, provide only for criminal liability and not for civil liability; or in rare instances it may merely prohibit certain conduct, and contain no provision for liability at all. In such cases the initial question is whether the legislation or regulation is to be given any effect in a civil suit. Since the legislation has not so provided, the court is under no compulsion to accept it as defining any standard of conduct for purposes of a tort action.

.     .     .     .     .

On the other hand, the court is free, in making its own judicial rules, to adopt and apply to the negligence action the standard of conduct provided by such criminal enactment or regulation. This it may do even though the provision is for some reason entirely ineffective for its initial purposes, as where a traffic signal is set up

## C.

The Federal Act requires pharmaceutical manufacturers to submit detailed drug applications, which include "full reports of investigations which have been made to show whether or not such drug is safe for use and whether such drug is effective in use." 21 U.S.C. § 355(b)(1)(A); *see also* 21 C.F.R. §§ 312.1 to 312.6. Additionally, after receiving approval, a manufacturer regularly must update its application with

> data or information, received or otherwise obtained by such applicant with respect to such drug, as the Secretary may by general regulation, or by order with respect to such application, prescribe on the basis of a finding that such records and reports are necessary in order to enable the Secretary to determine, or facilitate a determination whether there is or may be ground for invoking subsection (e) [9] of this section.

21 U.S.C. § 355(j)(1) (renumbered to 21 U.S.C. § 355(k)(1) by 1984 amendment).

Moreover, under federal law, the prescription drug manufacturer,[10] packer, or distributor has the duty to label the prescription drugs that it respectively has manufactured, packed, or distributed. *See* 21 U.S.C. § 352(b); 21 C.F.R. § 201.100. In fact, "no person other than the manufactur-

> under an ordinance which never has been properly published and so for the purposes of a criminal prosecution is entirely void. The decision to adopt the standard is purely a judicial one, for the court to make. When the court does adopt the legislative standard, it is acting to further the general purposes which it finds in the legislation, and not because it is in any way required to do so.
> Restatement (Second) of Torts § 286 comment d.

**9.** Subsection (e) pertains to the withdrawal of approval of a drug. 21 U.S.C. § 355(e).

**10.** The term "manufacturer" is defined by the federal regulations as "the person who performs all of the following operations that are required to produce the product: (1) mixing, (2) granulating, (3) milling, (4) molding, (5) lyophilizing, (6) tableting, (7) encapsulating, (8) coating, (9) sterilizing, and (10) filling sterile aerosol or gaseous drugs into dispensing containers." 21 C.F.R. § 201.1(b). Appellant has not contended that appellee satisfies the definition of manufacturer.

er, packer or distributor may be identified on the label of a drug or drug product." 21 C.F.R. § 201.1(h)(1); *see also id.* § 201.1(a). The label must bear the following information: "description, clinical pharmacology, indications and usage, contraindications, warnings, precautions, adverse reactions, drug abuse and dependence, overdosage, dosage and administration, how supplied." 21 C.F.R. § 201.56. According to the Federal Act, similar to the Commonwealth Act, a prescription drug is misbranded if its labeling fails to include,

> such adequate warnings against use in those pathological conditions or by children where its use may be dangerous to health or against unsafe dosage or methods or duration of administration or application, in such manner and form, as are necessary for the protection of users.

21 U.S.C. § 352(f). *Compare* 35 Pa.S. § 780–108(6)(ii).

## D.

There is no question that manufacturers of potentially dangerous drugs are held to a high degree of care. As this Court said in *Henderson v. National Drug Company*, 343 Pa. 601, 610, 23 A.2d 743, 748 (1942), '... the public interest requires the holding of companies which make and sell drugs and medicine for use in the human body to a high degree of responsibility under both the criminal and civil law for any failure to exercise *vigilance* commensurate with the harm which would be likely to result from relaxing it.'

*Incollingo v. Ewing*, 444 Pa. 263, 287, 282 A.2d 206, 219 (1971). Despite our imposition on manufacturers of finished prescription drugs [11] of this enhanced duty of care, we

---

11. Although the term "manufacturer" in this context has not been judicially defined, it has been legislatively defined as a person who "manufactures a controlled substance, other drug or device." 35 Pa.S. § 780–102(b) para. 29. The Commonwealth Act defines "manufacture" as the

> production, preparation, propagation, compounding, conversion or processing of a controlled substance, other drug or device or packaging or repackaging of such substance or article, or the labeling or relabeling of the commercial container of such substance or article, but does not include the activities of a practitioner who, as an

have circumscribed the scope of their duty to warn. A manufacturer will be held liable "only if he fails to exercise reasonable care to inform those for whose use the article is supplied of the facts which make it likely to be dangerous." *Baldino v. Castagna*, 505 Pa. 239, 244, 478 A.2d 807, 810 (1984); *see also Makripodis v. Merrell–Dow Pharmaceuticals, Inc.*, 361 Pa.Super. 589, 596, 523 A.2d 374, 378 (1987); *Leibowitz v. Ortho Pharmaceutical Corp.*, 224 Pa.Super. 418, 432, 307 A.2d 449, 457 (1973) (equally divided court) (opinion in support of affirmance). In a line of cases beginning with *Incollingo v. Ewing*, 444 Pa. 263, 282 A.2d 206 (1971), our courts consistently have stated that a drug manufacturer's duty to warn extends only to the prescribing physician, and not to the ultimate consumer. *See id.*, 444 Pa. at 288, 282 A.2d at 220; *Baldino*, 505 Pa. at 244, 478 A.2d at 810; *Makripodis*, 361 Pa.Super. at 596, 523 A.2d at 378; *Leibowitz*, 224 Pa.Super. at 431, 307 A.2d at 457 (opinion in support of affirmance).

On only two prior occasions has this Court evaluated the issue of the duty to warn with respect to entities other than the final manufacturer within the chain of distribution of a prescription drug. In both *Coyle v. Richardson–Merrell, Inc.*, 372 Pa.Super. 118, 538 A.2d 1379 (1988), *allocatur granted*, 520 Pa. 588, 551 A.2d 215 (1988), and *Makripodis v. Merrell–Dow Pharmaceuticals, Inc.*, 361 Pa.Super. 589, 523 A.2d 374 (1987), we considered whether a pharmacist had a duty to furnish a warning with the drugs he or she dispensed, and we found no such duty. *Coyle*, 372 Pa.Super. at 121–22, 538 A.2d at 1381; *Makripodis*, 361 Pa.Super. at 597, 523 A.2d at 378. This general reluctance to expand tort liability within the distribution chain is consistent with our position that

> [i]t is illusory to believe the public does not pay for tort recoveries, or that resources for such are limitless. As it is with everything, a balance must be struck—certain

incident to his administration or dispensing such substance or article in the course of his professional practice, prepares compounds, packages or labels such substance or article. *Id.*

limits drawn.... A sound and viable tort system—generally what we now have—is a valuable incident of our free society, but we must protect it from excess lest it becomes unworkable.

*Steiner v. Bell Telephone Co.,* 358 Pa.Super. 505, 522, 517 A.2d 1348, 1357 (1986) (en banc), *aff'd without opinion,* 518 Pa. 57, 540 A.2d 266 (1988).

### E.

█ In this case, we decline to impose on a bulk supplier of pharmaceutical chemicals the additional duties to warn suggested by appellant. The rigorous testing and reporting required of final manufacturers by federal law, *see, e.g.,* 21 U.S.C. § 355(b)(1)(A), (k)(1), renders superfluous detailed warning by bulk suppliers to those same manufacturers. In a recent case the Washington Supreme Court addressed a similar issue of vertical liability:

We agree with Lilly that there should be no vertical liability in DES cases. DES is not inherently harmful, and is still prescribed today.... Furthermore, the United States [Food and] Drug Administration requires the tablet manufacturers ... to account for and warn of a drug's properties. 21 U.S.C. § 355. It would *therefore be anomalous to require the raw manufacturer to conduct separate tests to determine the adverse effects of the drug when by federal statute, the tablet manufacturer bears this responsibility.*

*George v. Parke–Davis,* 107 Wash.2d 584, 599–600, 733 P.2d 507, 515 (1987) (emphasis added). We agree with the conclusion reached by the *George* court and decline to impose an additional common law duty to warn extending from a bulk supplier to a final manufacturer. Accordingly, we hold that beyond compliance with the labeling requirements of 21 U.S.C. § 353(a) and 21 C.F.R. § 201.122, appellee had no duty to provide a warning to Upjohn.

Like the testing requirements, the federal labeling requirements are extensive, *see, e.g.,* 21 U.S.C. § 352(f); 21

C.F.R. § 201.56. Again, the onus is on the manufacturer to provide the labeling, *see, e.g.,* 21 U.S.C. § 352, that reaches "those for whose use the article is supplied," namely the prescribing physician. *Baldino,* 505 Pa. at 244, 478 A.2d at 810. In light of federal law, we conclude that a separate warning from a bulk supplier to the medical community would be duplicative. We, therefore, hold that appellee had no duty to warn the prescribing physician of appellant's decedent.

We find further support for the foregoing conclusions in *Incollingo v. Ewing,* 444 Pa. 263, 282 A.2d 206 (1971), and its progeny, in which our courts declined to require separate warnings extending from prescription drug manufacturers and druggists to the general public. In *Incollingo* our Supreme Court concluded that the duty to warn the patient-consumer was one exclusively borne by the prescribing physician. *Id.,* 444 Pa. at 288, 282 A.2d at 220. *See also Baldino,* 505 Pa. at 244–45, 478 A.2d at 810; *Makripodis,* 361 Pa.Super. at 596, 523 A.2d at 378. The rationale for this rule is obvious: It is the physician who has the superior knowledge in the circumstances because he or she is able to balance the risks associated with the prescription drug against its utility "in light of his [or her] personal knowledge of the patient's medical history." *Leibowitz,* 224 Pa.Super. at 431, 307 A.2d at 457 (opinion in support of affirmance); *see also Makripodis,* 361 Pa.Super. at 596, 523 A.2d at 378 ("the warnings which are required to be given by the manufacturer must be directed to the physician, not the patient-consumer. This is so because it is the duty of the prescribing physician to be fully aware of (1) the characteristics of the drug he is prescribing, (2) the amount of the drug which can be safely administered, and (3) the different medications the patient is taking. It is also the duty of the prescribing physician to advise the patient of any dangers or side effects associated with the use of the drug as well as how and when to take the drug."). Here, appellant does not argue that bulk suppliers of pharmaceutical chemicals

should be required to warn consumers, but rather that bulk suppliers have a duty to warn final manufacturers and the medical community. It is the final manufacturer and the medical community, however, who are in a better position to assess the risks associated with the administration of the prescription drug. As this Court noted in *Wenrick v. Schloemann–Siemag Aktiengesellschaft*, 361 Pa.Super. 137, 522 A.2d 52 (1987), *allocatur granted*, 518 Pa. 643, 542 A.2d 1371 (1988), "[a] component part manufacturer should not be burdened with the heavy duty of inquiring into every possible use of their part and warning of every possible danger that might be associated with the integration of their part into the completed product." *Id.*, 361 Pa.Superior Ct. at 149 n. 1, 522 A.2d at 57–58 n. 1. Thus, our holding here, like that of our Supreme Court in *Incollingo*, places the duty on the party that is best able to ascertain and balance the risks associated with the final prescription drug. Hence, imposition of an additional *common law* duty to warn as between entities higher in the chain of distribution, would be in derogation of the policy considerations underlying the decisions in *Incollingo* and its progeny.

Accordingly, because appellee satisfied the federal labeling requirements imposed on a bulk supplier, 21 C.F.R. § 201.122, we conclude that the court below did not abuse its discretion in granting appellee's renewed motion for summary judgment. *See Ackler*, 380 Pa.Super. at 183, 551 A.2d at 292. For the foregoing reasons, we affirm the order below.

Order affirmed.