### Elaine FERRARA

v.

### BERLEX LABORATORIES, INC. and Parke–Davis, Inc.

### Civ. A. No. 89–8211.

United States District Court, E.D. Pennsylvania.

March 7, 1990.

slip op. at 11–13, 1989 WL 3480 (E.D.Pa. Jan. 13, 1989).

Caroline Reeves and Stephen Sheller, Sheller, Ludwig & Badey, Philadelphia, Pa., for Elaine Ferrara.

Mary P. Hugues and Murray S. Levin, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for Parke–Davis, Inc.

William M. Connor, Korn, Kline & Kutner, Philadelphia, Pa., for Berlex Laboratories, Inc.

## MEMORANDUM OPINION AND ORDER

WEINER, District Judge.

Plaintiff, Elaine Ferrara, brought this products liability action in this court, pursuant to 28 U.S.C. § 1332, against two pharmaceutical manufacturers, Berlex Laboratories, Inc. and Parke–Davis, Inc., for failure to adequately warn the plaintiff of their products' dangerous side effects when taken together. Currently before this court are the defendants' motion for summary judgment pursuant to Fed.R. Civ.P. 56. For the reasons which follow, we grant defendants' motion.[1]

Defendant, Berlex Laboratories, Inc. is a Delaware corporation with its principal place of business at 300 Fairfield Road, Wayne, New Jersey. Parke–Davis[2] is an unincorporated division of Warner–Lambert Company, which is incorporated in Delaware with its principal place of business at 201 Tabor Road, Morris Plains, New Jersey. The amount in controversy is in excess of $50,000.00. Therefore, we have jurisdiction over the parties pursuant to 28 U.S.C. § 1332.

### FACTS[3]

On August 28, 1986, plaintiff's psychiatrist, Dr. Arthur P. Schless, prescribed Parke–Davis' product Nardil for Ferrara's depression. Plaintiff specifically requested Nardil, and Dr. Schless concluded, after examination, that Nardil was appropriate. Dr. Schless understood and was aware of the risks and contraindications associated with Nardil through the package insert provided by Parke–Davis, his medical training and continuing medical education, and literature of his profession. (Defendants' Motion for Summary Judgment, p. 4). On December 13, 1987, Dr. Schless authorized his nurse to telephone a refill prescription for Nardil to plaintiff's pharmacy.

On December 17, 1987, plaintiff's physician, Dr. Louis Lowry, M.D., examined her for complaints of swelling on the left side of her nasopharynx. Dr. Lowry diagnosed the condition as chronic sinusitis. Despite advising Dr. Lowry that she was taking Nardil, Dr. Lowry prescribed Deconamine, a decongestant. Dr. Lowry was aware that drugs such as Nardil, should not be taken in combination with drugs such as Deconamine. The doctor apparently did not consult the warning inserts for Nardil or the *Physician's Desk Reference* when he prescribed Deconamine to the plaintiff.

That evening, plaintiff ingested Deconamine. The combination of the Nardil and Deconamine caused plaintiff to suffer a hypertensive reaction culminating in a stroke. In a separate lawsuit, plaintiff was awarded a judgment against Dr. Lowry for medical malpractice.

Nardil, whose generic name is phenelzine sulfate, is an anti-depressant drug, which serves as a potent inhibitor of monoamine oxidase (hereinafter "MAO"), a complex enzyme system widely distributed throughout the body. When ingested with sympathomimetic drugs including Deconamine, Nardil can cause a hypertensive crisis and a

---

1. While only Parke–Davis has moved for summary judgment, both defendants are in the same position, vis-a-vis, the plaintiff. We, therefore, construe the motion filed by Parke–Davis as also having been filed by Berlex.

2. Plaintiff has incorrectly named the defendant "Parke–Davis, Inc."

3. Although the parties have not stipulated to the facts, they are not in disagreement as to the events that culminated in plaintiff's stroke.

stroke. Moreover, the *Physician's Desk Reference* warns in part:

Description: Nardil is a potent inhibitor of monoamine oxidase (MAO).

Contraindications: .... The potentiation of sympathomimetic substances and related compounds by MAO inhibitors may result in hypertensive crises (See Warnings). Therefore, patients being treated with Nardil should not take *sympathomimetic drugs.*

Important Warnings: The most serious reactions to Nardil involve changes in blood pressure.

*Hypertensive Crisis:* The most important reaction associated with Nardil administration is the occurrence of hypertensive crises, which have sometimes been fatal....

(emphasis in original).

Nardil is only available through prescription.

Deconamine is an over-the-counter decongestant containing the active ingredient pseudoephedrine. Pseudoephedrine is recommended for the relief of nasal congestion associated with the common cold, hay fever, allergies, sinusitis, eustachian tube blockage, and vasomotor and allergic rhinitis. Deconamine is manufactured by the defendant Berlex Laboratories.

In considering a motion for summary judgment, we must determine whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact, and whether the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). *Arnold Pontiac–GMC, Inc. v. General Motors Corporation*, 786 F.2d 564, 568 (3d Cir.1986); *Fragale & Sons Beverage Co. v. Dill*, 760 F.2d 469, 472 (3d Cir. 1985); *Wolk v. Saks Fifth Avenue, Inc.*, 728 F.2d 221, 224 (3d Cir.1984); *First Jersey National Bank v. Dome Petroleum Limited*, 723 F.2d 335, 338 (3d Cir.1983). The movant has the burden of demonstrating that there are no genuine issues of material fact and all reasonable inferences from the record must be drawn in favor of the non-moving party. *Gans v. Mundy,*

762 F.2d 338, 340 (3d Cir.1985); *United States v. Athlone Industries, Inc.*, 746 F.2d 977, 981–82 (3d Cir.1984); *Small v. Seldows Stationary*, 617 F.2d 992, 994 (3d Cir.1980).

In their motion, defendants argue that under Pennsylvania law, a manufacturer of prescription drugs may not be held liable for injuries allegedly caused by its drug, so long as the manufacturer adequately warns of the risks associated with the product. This duty to warn requires the manufacturer to warn the prescribing physician and not the patient. Also, defendants allege that both the manufacturers' package inserts and the information contained in the *Physician's Desk Reference* constituted adequate warning. Because the warnings were adequate, defendants press the conclusion that the so-called "learned intermediary" doctrine relieves them of liability.

Plaintiff argues that the learned intermediary doctrine is inapplicable in this case because of the especially dangerous nature of Nardil. Because over 40 types of foods and beverages, if consumed with Nardil, can cause hypertensive crisis, the plaintiff argues that too much emphasis is placed on the prescribing physician to properly advise the patient. Therefore, plaintiff argues that drug manufacturers must be required to directly warn patients of the risks involved with a particular drug. Plaintiff suggests that a wallet sized insert should have been required to warn the patient. Because of the seriousness of Nardil, she argues that an informational card is the only effective means to adequately protect the patient, who might forget the long complicated list of prohibited foods and drugs given by his or her doctor.

Federal courts sitting in diversity must apply the substantive law of the states in which they sit. *Ciccarelli v. Carey Canadian Mines, Ltd.*, 757 F.2d 548, 552 (3d Cir.1985) *citing Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *see Safeco Ins. Co. of Am. v. Wetherill*, 622 F.2d 685, 687 (3d Cir.1980). In Pennsylvania, the "learned intermediary" doctrine relieves drug manufacturers of liability in tort actions, if ade-

quate warning is given to the physician. *Makripodis v. Merrell–Dow Pharm., Inc.,* 361 Pa.Super. 589, 596, 523 A.2d 374, 378 (1987). Generally, § 402A of the Restatement (Second) of Torts imposes strict liability on the seller of any product "in a defective condition unreasonably dangerous to the user or consumer ..." Restatement (Second) of Torts § 402A(1) (1965). In *Incollingo v. Ewing,* 444 Pa. 263, 287, 282 A.2d 206 (1971), the Pennsylvania Supreme Court recognized that drug manufacturers cannot be strictly liable "merely because of [the] dangerous propensities of the product." Relying on comment K of § 402A, the *Incollingo* court held that where a product is properly prepared and marketed and proper warning is given, the manufacturer "is not to be held to strict liability for unfortunate consequences attending their use...." *Id.* at 288, 282 A.2d 206; *citing* Restatement (Second) of Torts § 402A, comment K (1965); *see Baldino v. Castagna,* 505 Pa. 239, 478 A.2d 807, 810 (1984), *Leibowitz v. Ortho Pharmaceutical Corp.,* 224 Pa.Super. 418, 307 A.2d 449, 457 (1973). Under this doctrine, the manufacturer must warn and inform the prescribing physician and not the patient-consumer. *Makripodis,* 523 A.2d 374, 378 (Pa.Super.1987).

The rationale behind this doctrine is simply stated. In the dispensing of prescription drugs, the physician is required to act as a learned intermediary between the manufacturer and patient because of the complexity of medicines and the doctor's medical knowledge. *See Plummer v. Lederle Laboratories, Div. of Am. Cyanamid Co.,* 819 F.2d 349, 356 (2d Cir.1987), *Terhune v. A.H. Robins Co.,* 90 Wash.2d 9, 577 P.2d 975, 978 (1978). Because of his position, directly dealing with the patient, and his medical expertise, the physician is assigned the duty to be fully aware of "1) the characteristics of the drug he is prescribing, 2) the amount of the drug which can be solely administered, and 3) the different medications the patient is taking." *Makripodis,* 523 A.2d 374, 378 (Pa.Super. 1987). Also, a patient presumably places reliance on a physician's knowledge and expertise when abiding by his medical advice. Through the patient-doctor relationship, the drug manufacturer may, therefore, reasonably assume the physician will exercise independent judgment for the benefit of the patient.

In the case *sub judice,* the requirement for the "learned intermediary" doctrine has been met. In defendants' brief for the motion, Dr. Lowry's affidavit admitted to negligently prescribing Deconamine and being independently and adequately warned about the risks associated with Nardil. Had Dr. Lowry properly recalled those warnings, he admitted he would not have prescribed the decongestant. The doctor's failure to remember Nardil as an MAO inhibitor and his prescribing Deconamine was the causal link between Nardil and the plaintiff's injuries. Therefore, the learned intermediary doctrine places responsibility at the door of the prescribing physician and serves to shield the drug manufacturer.

Plaintiff's argument requests that this court modify the established law of Pennsylvania, which we decline to do. Despite the argued usefulness of an informational card, it has never been recognized in Pennsylvania as an exception to the delegation of liability subsumed in the learned intermediary doctrine. This argument does not address the issue at hand, i.e., whether the defendants adequately warned Dr. Lowry. Dr. Lowry had admitted that he had knowledge of the harmful interaction of the two drugs and that he was himself negligent in failing to put this knowledge to use to avoid the combination. While plaintiff argues that the *Incollingo* line of cases are inapplicable, her distinctions based on the nature of the drugs involved are not persuasive.

We concur with the defendants' argument that the learned intermediary doctrine precludes strict liability from being imposed on the drug manufacturers. The parties have provided sufficient pleadings, admissions and affidavits to show there is no genuine issue as to any material fact. Further, application of the learned intermediary doctrine demonstrates that they are entitled to a judgment as a matter of law.

Therefore, summary judgment will be entered in favor of the defendants.